**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HENROB LIMITED,

        Plaintiff/Counter-Defendant,

v.                                       Case No. 05-CV-73214-DT

BÖLLHOFF SYSTEMTECHNICK GMBH & CO.
and BÖLLHOFF RIVNUT, INC.,
BAYERISCHE MOTOREN WERKE AG, BMW NA,
ROLLS-ROYCE MOTOR CARS LTD.
and ROLLS-ROYCE NA,

        Defendants/Counter-Plaintiffs.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON DEFENDANTS' INTERVENING RIGHTS IN THE '305 PATENT AND GRANTING HENROB'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' INTERVENING RIGHTS DEFENSE**

This litigation involves two patents, U.S. Patent No. 5,752,305 (the "'305 Patent") and U.S. Patent No. 5,779,127 (the "'127 Patent"), which deal with the self-piercing riveting technology invented by Plaintiff/Counter-Defendant Henrob Limited ("Henrob"). Pending before the court are cross motions for summary judgment on Defendants'[1] alleged intervening rights in the patents. The motions have been fully briefed, and the court has concluded that no further hearing on these motions is necessary.[2] *See* E.D.

_____

[1]Defendants are defined as Defendants/Counter-Plaintiffs Böllhoff Systemtechnik GmbH & Co., and Böllhoff Rivnut, Inc., (collectively "Böllhoff") and Defendants Bayerische Motoren Werke AG, BMW NA, Rolls-Royce Motor Cars Ltd., and Rolls-Royce NA (collectively "BMW").

[2]The court conducted a hearing in this case on December 19, 2008. Although the instant motions were not scheduled for hearing on that date, the court allowed counsel an opportunity to comment on any pending motions at that time. (*See* 12/15/08 Order.)

Mich. LR 7.1(e)(2).  For the reasons set forth below, the court will grant Henrob's motion and deny Defendants' motion.

## I.  BACKGROUND[3]

Böllhoff Systemtechnik GmbH & Co. KG initiated this civil action by filing complaints in May 2005 (in the U.S. District Court for the Northern District of Illinois) and September 2005 (in this court) seeking declaratory judgments of noninfringement, invalidity, and unenforceability of the '305 Patent against Henrob.  In December 2005, Henrob amended its answer and counterclaims to add Böllhoff Rivnut, Inc. as a counterclaim-defendant and to add a counterclaim alleging infringement of the '127 Patent against the Böllhoff Defendants.  (Doc. # 23.)  The Böllhoff Defendants replied to Henrob' s counterclaims in December 2005 and alleged several affirmative defenses. (Doc. # 29.)  In March 2006, the court consolidated a case (civil action no. 2:05-CV-73987) pending between Henrob and the BMW Defendants, in which Henrob had alleged infringement of the '305 Patent against the BMW Defendants for their use of the Böllhoff machines accused of infringement in this matter.  (Pl.'s Undisputed Fact # 1.)  On June 29, 2006, Henrob filed an amended complaint against the BMW Defendants, limiting the period for which it seeks damages to the time period prior to

---

[3] The facts relative to the issue of Defendants' alleged intervening rights are largely uncontested (as evinced, in part, by the fact that all parties moved for summary judgment on this issue).  Except where otherwise noted, the undisputed facts were proffered by one party and admitted by the opposing party.  Where a party admitted a proffered fact, but qualified it in some way, the court has included the fact as "undisputed" to the extent that the qualification allows.  When possible, the court has noted which party was the original proffering party of an undisputed fact (e.g., Pl.'s Undisputed Fact # ___, Defs.' Undisputed Fact # __ .)  Finally, because the parties presented their facts in numbered paragraphs, rather than in numbered sentences, the court's citations will similarly refer to the parties' proffered paragraphs.

2

January 12, 2006 and disclaiming any claim to injunctive relief.  (Defs.' Undisputed Fact # 19.)

As their third affirmative defense to Henrob's allegations of infringement, the Böllhoff Defendants alleged that "Böllhoff has intervening rights under the '305 Patent, as proscribed by 35 U.S.C. §§ 252 and 307(b)."  (Pl.'s Undisputed Fact # 2; Doc. # 29 at 7.))  As their fifth affirmative defense to Henrob' s allegations of infringement, the BMW Defendants also alleged that each BMW Defendant "has intervening rights under the '305 Patent, as proscribed by 35 U.S.C. Sections 252 and 307."  (Pl.'s Undisputed Fact # 3; Doc. # 75 at 7 [Rolls-Royce NA]; see also Doc. # 76 at 7 [BMW AG], Doc. # 77 at 7 [BMW NA], Doc. # 78 at 7 [Rolls-Royce Ltd.].)

The '305 Patent, entitled "Self-Piercing Riveting Method and Apparatus," issued on May 19, 1998.  (The '305 Patent, Pl.'s Ex. 1.)  The '127 Patent, entitled "Fastening Machines," issued on July 14, 1998.  (The '127 Patent, Pl.'s Ex. 2.) (Pl.'s Undisputed Fact # 4.)

On March 13, 2003, Böllhoff's counsel, Joseph Lanser, filed an ex parte request for reexamination of the '305 Patent with the United States Patent and Trademark Office ("USPTO" ) on behalf of Böllhoff.  ('305 Patent Reexamination History at HEN 00457, Pl.'s Ex. 3.)  On the same day, Mr. Lanser also filed an ex parte request for reexamination of the '127 Patent on behalf of Böllhoff.  (Pl.'s Undisputed Fact # 5; '127 Patent Reexamination History at HEN 01235, Pl.'s Ex. 4.)  On May 30, 2003, the USPTO granted the ex parte request for reexamination of the '305 Patent filed by Mr. Lanser on behalf of Böllhoff.  ('305 Patent Reexamination History at HEN 00570-74, Pl.'s Ex. 3.)  On June 3, 2003, the USPTO granted the ex parte request for

3

reexamination of the '127 Patent filed by Mr. Lanser on behalf of Böllhoff.  (Pl.'s Undisputed Fact # 6; '127 Patent Reexamination History at HEN 01227-31, Pl.'s Ex. 4.) The orders granting reexamination of the '305 and the '127 Patents indicated that a substantial new question of patentability had been raised by the requests.  (Def.'s Undisputed Counter-Fact # 6.)

During the reexamination proceeding for the '305 Patent, the USPTO initially rejected claims 1-5, 8-12, 14 and 15 of the '305 Patent under 35 U.S.C. §§ 102(a) or 103(a).  ('305 Patent Reexamination History at HEN 00590-599, Pl.'s Ex. 3.)  However, the USPTO confirmed the patentability of dependent claims 6, 7, and 13 as originally issued in the '305 Patent.  (Pl.'s Undisputed Fact # 7; '305 Patent Reexamination History at HEN 590, 599-600.)

In response to the USPTO' s initial rejection of certain claims of the '305 Patent, Henrob filed its "Response A" on February 19, 2004, in which Henrob explained its invention as disclosed and claimed in the '305 Patent, discussed the disclosure of the cited prior art references, and noted the differences between its claimed invention and the prior art.[4]  (Pl.'s Undisputed Fact # 8; '305 Patent Reexamination History at HEN 00618-635, Pl.'s Ex. 3.)  Thereafter, in an Office Action dated May 11, 2004, the USPTO confirmed the patentability of claims 9-15 as originally issued in the '305 Patent. (Pl.'s Undisputed Fact # 8; '305 Patent Reexamination History at HEN 00636-37.)  The USPTO maintained its initial rejection of claims 1-5 and 8 under 35 U.S.C. §§ 102(a) and 103(a).  (Pl.'s Undisputed Fact # 8.)  With respect to claim 1, the Examiner advised:

---

[4]The parties dispute the accuracy of Henrob's representations in its "Response A." These disputes are not material to the questions before the court in this order.

4

after reviewing the Specification, there is no express or implied definition or limitation as to what "*sufficiently substantial* to prevent the sheet metal material from being drawn laterally inwards towards the rivet," entails. The term "substantially" is often used in conjunction with another term to describe a particular characteristic of the claimed invention. *It is a broad term. . . .*

. .. [I]t is believed that the references above [i.e., the AI Article and the Sheet Metal Article] satisfy this limitation, since the spring pre-clamping of these references would provide some degree of clamping sufficiently substantial to prevent the sheet material from being drawn laterally inwards towards the rivet. This is an obvious improvement over the prior art riveting processing without preclamping.

(Defs.' Counter-Fact # 8; 305 Patent Reexamination History at HEN000648-49

(emphasis in original).

On August 11, 2004, Henrob submitted a document titled "Amendment B" to the USPTO. ('305 Patent Reexamination History at HEN 00657, Pl.'s Ex. 3.) In this submission, Henrob contends that it clarified[5] the "clamping force" language of claim 1 by replacing the term "sufficiently substantial" with the term "sufficient" and by describing the clamping force as "larger than a clamping force merely required to hold said sheets against each other in a generally non-moving relation." (*Id.* at HEN 00658, 663). Henrob stated that these "clarifications" were inherent to the "clamping force" values disclosed by the specification. (*Id.* at HEN 00663-664.) (Pl.'s Undisputed Fact # 9.)

"Amendment B" also included a proposed claim numbered 16 that included the following element: "c) clamping the sheets together before the rivet it driven into the first

_____

[5]Defendants do not dispute that Henrob submitted and "Amendment B," but contend that the amendment did more than merely "clarify" the language of the claim. This argument will be addressed below.

sheet with a clamping force applied immediately adjacent the rivet, the clamping force being sufficient to prevent substantial distortion of sheet material from being drawn laterally inwards towards the rivet as the rivet is driven into the sheets."  (Pl.'s Counter Fact # 8.)

In an Advisory Action dated August 30, 2004, the USPTO indicated that the claim 1 of the '305 Patent was patentable as amended in Henrob's "Amendment B" submission.  (Pl.'s Undisputed Fact. # 10; '305 Patent Reexamination History at HEN 00678-79 (¶ 4), Pl.'s Ex. 3.) Thereafter, on September 10, 2004, Henrob submitted a document titled "Amendment C" which included claim 1 as "clarified" (or, as Defendants state, as "presented") in "Amendment B" and newly-included claim 16.  (Pl.'s Undisputed Fact. # 10; '305 Patent Reexamination History at HEN 00682-83, 686-87). The language of claim 16 was identical to that of original claim 1 of the '305 Patent with the sole substitution of the term "sufficient" for "sufficiently substantial."  (Pl.'s Undisputed Fact. # 10; '305 Patent Reexamination History at HEN 00686-87, 689).

Previously, during the original prosecution of the '305 Patent, in an Amendment submitted to the USPTO on March 21, 1997, Henrob similarly described its invention as

> being based upon the realization that in a self-piercing riveting operation, the final quality of the product is significantly improved if the two sheets of material are clamped together with a force that is sufficient to prevent sheet material from being drawn radially inward towards the rivet axis as the rivet is driven.

('305 Patent File History at HEN 00404 (emphasis added), Pl.'s Ex. 5.)  Moreover, Henrob stated that claims 1 and 9 in the original '305 Patent

> claim that the clamping force must be sufficient enough to prevent sheet material from being drawn laterally inwards towards the rivet as the rivet is

driven into the sheets. <u>This is in contrast to merely clamping to ensure that the two sheets of material are in contact</u>.

(*Id.* at HEN 00405 (emphasis added).)  (Pl.'s Undisputed Fact. # 11.)

On January 4, 2005, the USPTO issued its Notice of Intent to Issue Ex Parte Reexamination Certificate, in which the USPTO confirmed the patentability of original claims 9-15 of the '305 Patent, amended claims 1-8, and new claim 16.  (Pl.'s Undisputed Fact. # 12; '305 Patent Reexamination History at HEN 00696-97, Pl.'s Ex. 3.)  In the "Reasons for Patentability" of the Notice of Intent to Issue Ex Parte Reexamination Certificate, the Examiner stated,

> Regarding independent claim 1, the limitation, "the clamping force being sufficient to prevent sheet material from being drawn laterally inwards towards the rivet as the rivet is driven into the sheet[s], said clamping force being larger than a clamping force force [sic] merely required to hold said sheets tgether [sic] each other in a generally non-moving relationship," in combination with the other claimed subject matter defines over the prior art of record.

(Defs.' Undisputed Counter Fact # 12; Notice of Intent, Hen. Appdx Ex. 3, pg. HEN000700.)  With regard to claim 16, the Examiner stated "the limitation, 'the clamping force being sufficient to prevent sheet material from being drawn laterally inwards towards the rivet as the rivet is driven into the sheet[s],' in combination with the other claimed subject matter defines over the prior art of record."  (Defs.' Undisputed Counter Fact # 12; Notice of Intent, Pl.'s Ex. 3 at HEN000700.)

On April 19, 2005, the USPTO issued an Ex Parte Reexamination Certificate for the '305 Patent ("Reexamination Certificate").  (Pl.'s Ex. 1, the '305 Patent.)  In the Certificate, the USPTO indicated that it confirmed the patentability of claims 9-15 of the

7

'305 Patent as granted by the USPTO in the '305 Patent issued on May 19, 1998. (Pl.'s Undisputed Fact # 13.)

The USPTO also confirmed the patentability of claim 1 of the '305 Patent as rewritten in the Reexamination Certificate. In particular, claim 1 was rewritten to add the underlined language: "<u>sufficient</u> to prevent sheet material from being drawn laterally inwards towards the rivet as the rivet is driven into the sheets, <u>said clamping force being larger than a clamping force merely required to hold said sheets against each other in a generally non-moving relation</u>" and to delete the phrase "sufficiently substantial." (Pl.'s Undisputed Fact # 14.)

As shown in the Reexamination Certificate, the USPTO further confirmed the patentability of claims 2-8 of the '305 Patent, which are dependent on claim 1 as rewritten in the Reexamination Certificate. (Pl.'s Undisputed Fact # 15.)

The USPTO also confirmed the patentability of claim 16 which was added during the course of the reexamination proceeding. (Pl.'s Undisputed Fact # 16.) Henrob contends that claim 16 in the Reexamination Certificate is merely claim 1 of the '305 Patent rewritten to substitute the claim term "sufficient" for the deleted phrase "sufficiently substantial." (Pl.'s Proposed Fact # 16.) Defendants argue that claim 16 is a "new claim" which was added during the reexamination process and was not present in the '305 Patent before the reexamination proceeding. (Defs.' Counter Fact # 16.)

The USPTO granted the ex parte request for reexamination of the '127 Patent on June 3, 2003. ('127 Patent Reexamination History at HEN 01227-31, Pl.'s Ex. 4.) On March 3, 2005, during the pendency of the reexamination proceeding for the '127 Patent, Mr. Lanser (counsel for Böllhoff) sent a letter to the USPTO requesting an

8

update on status of the reexamination proceeding. (Id. at HEN 01202, Pl.'s Ex. 4.) (Pl.'s Undisputed Fact. # 17.)

On April 15, 2005, the USPTO issued its Notice of Intent to Issue Ex Parte Reexamination Certificate, in which the USPTO confirmed the patentability of amended claims 1 and 10 of the '127 Patent (as amended in the attached Examiner's Amendment). ('127 Patent Reexamination History at HEN 01196-1201, Pl.'s Ex. 4.) The final limitation of claims 1 and 10 were amended to delete the terms in brackets and add the underlined terms as follows:

Claim 1:

the fastener actuator is vertically movable through the fastener delivery passage, the actuator including a nose at its leading end for engaging a fastener and advancing the same toward the workpiece, the actuator being provided with an internal <u>axial</u> passage one end of which is open to the nose of the actuator and another end of which is connected to a vacuum source through a control, [whereby connecting] the internal passage <u>being connected</u> to the vacuum source [effects] <u>during advance of the fastener through the delivery passage by the actuator so as to effect</u> vacuum retention of the fastener on the nose of the actuator to maintain orientation of the fastener as the actuator advances <u>through the delivery passage</u> toward the workpiece.

Claim 10:

the fastener actuator is mounted for vertical reciprocal movement in the housing and through the fastener delivery passage, the actuator including a nose at its leading end for engaging a fastener and advancing the same toward the workpiece, the actuator being provided with an internal axial passage one end of which is open to the nose of the actuator and another end of which is connected to a vacuum source through a control, [whereby connecting] the internal passage <u>being connected</u> to the vacuum source [effects] <u>during advance of the fastener through the delivery passage by the actuator so as to effect</u> vacuum retention of the fastener on the nose of the actuator to maintain orientation of the fastener as the actuator advances through the delivery passage toward the workpiece.

(*Id.* at HEN 01198-99.) (Pl.'s Undisputed Fact. # 18.)

On August 9, 2005, the USPTO issued an Ex Parte Reexamination Certificate for the '127 Patent ("Reexamination Certificate" ).  (Pl.'s Ex. 2, the '127 Patent.)  In the Certificate, the USPTO indicated that it confirmed the patentability of claims 1 and 10 (and claims 2-9 and 11-17 respectively depending therefrom) of the '127 Patent as amended during the reexamination proceeding.  (*Id.*) (Pl.'s Undisputed Fact. # 19.)

On January 4, 2008, Henrob served Interrogatory No. 21 on Böllhoff, requesting Böllhoff to "[s]tate each and every fact upon which you rely for support of your assertion that Böllhoff has intervening rights under the Patents-in-Suit, and identify any and all witnesses whose testimony you may rely on to support this assertion."  (Henrob' s Sixth Set Of Interrogs. To The Böllhoff Defendants (Nos. 20-37), Pl.'s Ex. 6).  (Pl.'s Undisputed Fact. # 20.)

In its February 15, 2008 response to Interrogatory No. 21, Böllhoff stated the basis for its intervening rights defense was that

> Böllhoff and/or Böllhoff' s customers, made, purchased, or used within the United States, or imported into the United States riveters or products manufactured with Böllhoff riveters that Henrob now alleges are patented by amended or new claims in the '305 Patent and '127 Patent after the issuance of reexamination certificates for such patents and which were not present [in] the '305 Patent and '127 Patent before the reexamination certificates respectfully issued.

(Böllhoff Defs.' Ans. To Henrob' s Sixth Set of Interrogs., Pl.'s Ex. 7 at 12-15.) Böllhoff also claimed that

> prior to issuance of the respective certificates of reexamination issued for the '305 Patent and '127 Patent, Böllhoff and/or Böllhoff' s customers made substantial preparation for making, purchasing or using within the United States, or importing into the United States, riveters or products manufactured with Böllhoff riveters, that Henrob now alleges are patented by amended or new claims in the '305 Patent and '127 Patent after the issuance of reexamination certificates for such patents, and which were

10

not present in the '305 Patent and '127 Patent before the reexamination certificates respectfully issued.

(*Id.* at 13.)  (Pl.'s Undisputed Fact. # 21.)

In its February 15, 2008 response to Interrogatory No. 21, Böllhoff also stated

with regard to the '305 Patent, Böllhoff and Böllhoff' s customers are entitled to intervening rights because during the reexamination proceeding for the '305 Patent, independent claims 1 and 9, and dependent claims 2-5 and 8, which depend on claim 1, and dependent claims 10-12 and 15, which depend on claim 9, were rejected by the [USPTO] on the basis that they were invalid. … Henrob then amended independent claim 1 by a narrowing amendment and added new independent claim 16, which did not exist in the original '305 Patent and which also pertains to a method of riveting. … [T]he scope of claims 1, 9 and 16 are substantially the same and each claims [sic] includes substantially the same limitations and phrases, and any argument regarding the patentability of any one of these claims necessarily would be applicable [to], and therefore narrow the scope of, the other claims.

(*Id.* at 14 (emphasis added).)  (Pl.'s Undisputed Fact. # 22.)

Böllhoff further stated in its response to Interrogatory No. 21 that

[w]ith regard to the '127 Patent, Böllhoff and Böllhoff' s customers are entitled to intervening rights because during the reexamination proceeding for the '127 Patent, independent claims 1 and 10 were amended by Examiner's Amendment, with Henrob' s approval, in order to differentiate the invention claimed in claims 1and 10 from the invention disclosed in Japanese reference JP-05-154597. Because claims 1 and 10 were amended during reexamination, the scope of claims 1 and 10, and necessarily claims 2-9 and 11-17, which respectively depend therefrom, were narrowed. Prior to such amendment, claims 1 and 10 were invalid over the Japanese reference JP-05-154597. As such, claims 1-17, as amended during the reexamination of the '127 Patent, were not valid, existing claims in the '127 Patent before reexamination.

(*Id.* at 15.)

On January 4, 2008, Henrob served Interrogatory No. 6 on BMW, requesting

BMW to "[s]tate each and every fact upon which you rely for support of your assertion

that BMW has intervening rights under the '305 Patent and identify any and all

11

witnesses whose testimony you may rely on to support this assertion." Henrob's

Second Set Of Interrogs. To The BMW Defendants (Nos. 4-30) (Pl.'s Ex. 8).  (Pl.'s

Undisputed Fact. # 24.)

In its February 15, 2008 response to Interrogatory No. 6, BMW stated the basis

for its intervening rights defense was that

> During the reexamination of the '305 Patent, claim 1 was rejected as being unpatentable over the prior art. Claim 1 was amended during the reexamination to distinguish over the prior art and to place claim 1 in form for allowance, and new claim 16 was added during reexamination.

(BMW Defs.' Ans. To Henrob's Second Set of Interrogs., Pl.'s Ex. 9 at 6-8).  BMW

further stated that

> In particular, claim 1 was amended to add the limitation "said clamping force being larger than a clamping force merely required to hold said sheets against each other in a generally non-moving relation," and to change "clamping force being sufficiently substantial" to "clamping force being sufficient." These changes to the claim altered the scope of the claim in that they substantively changed the meaning of the clamping force used in the clamping step of the method. Therefore, claim 1 of the original '305 patent is not substantially identical to claim1 of the reexamined '305 Patent. Accordingly, BMW is entitled to intervening rights with respect to claim 1 and its dependent claims 2-8.

> Claim 16 of the reexamined '305 Patent is not substantially identical to the claims of the original '305 Patent, because claim 16 is a new claim added during reexamination. The original patent included claims 1-15. Claim 16 was added by the Amendment filed September 10, 2004.

> Because new claims were issued as a result of the reexamination, the BMW Defendants should receive absolute immunity from liability for the period prior to the issuance of the new claims. The BMW Defendants should also be immunized from any damages for the time period after issuance of the new claims following reexamination in light of the substantial investment made by them prior to the issuance of the new claims.

(*Id.* at 7-8.) (Pl.'s Undisputed Fact. # 25.)

12

In the time period between January 1, 2000 and April 19, 2005, Defendant Bayerische MotorenWerke AG ("BMW AG") invested over 8 million Euros in the purchase of Böllhoff self-pierce riveting ("SPR") equipment.  In large measure, this was due to the negotiation in 2001 to purchase over 100 Böllhoff SPR machines at 76,412 Euros each.  In this time period prior to April 19, 2005, BMW AG purchased  Böllhoff SPR machines for use in assembling its 5, 6 and 7 Series vehicles and body shells for Rolls-Royce vehicles at the BMW AG plant in Dingolfing, Germany.  The investment was intended to enable production of these vehicles until the planned release of the next generation of these vehicles with their new designs.  BMW AG has not purchased any Böllhoff SPR machines in the time period since April 19, 2005.  (Defs.' Undisputed Fact # 15.)

The BMW Defendants proffer various facts in support of their equitable intervening rights defense, none of which are disputed by Henrob.  Defendant BMW of North America, LLC ("BMWNA") is in the business of importing vehicles manufactured by BMW AG into the United States and selling them to authorized BMW dealers in the United States.  BMWNA depends on BMW AG as the source for the supply of the vehicles that it sells.  (Defs.' Undisputed Fact #16.)

Defendant Rolls-Royce Motor Cars Ltd.  ("Rolls-Royce Ltd.") assembles Rolls-Royce vehicles in its manufacturing facility in the United Kingdom.  It depends on BMW AG for the supply of body shells for the Rolls-Royce vehicles that it assembles.  (Defs.' Undisputed Fact # 17.)

Defendant Rolls-Royce Motor Cars NA, LLC ("RRNA") is in the business of

13

importing vehicles manufactured by Rolls-Royce Ltd. into the United States and selling them to authorized Rolls-Royce dealers in the United States.  RRNA depends on Rolls-Royce Ltd. as the source for the supply of Rolls-Royce vehicles that it sells.  (Defs.' Undisputed Fact # 18.)

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party must first show the absence of a genuine issue of material fact.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323).  The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus.*

14

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  He must put forth enough

evidence to show that there exists a genuine issue to be decided at trial.  *Plant*, 212

F.3d at 934 (citing *Anderson*, 477 U.S. at 256).  Summary judgment is not appropriate

when "the evidence presents a sufficient disagreement to require submission to a jury."

*Anderson*, 477 U.S. at 251-52 (1986).  The existence of a factual dispute alone does

not, however, defeat a properly supported motion for summary judgment – the disputed

factual issue must be material.  *See id.* at 252 ("The judge's inquiry, therefore,

unavoidably asks whether reasonable jurors could find by a preponderance of the

evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon

which a jury can properly proceed to find a verdict for the party producing it, upon whom

the *onus* of proof is imposed.'" (alteration in original) (citation omitted)).  A fact is

"material" for purposes of summary judgment when proof of that fact would establish or

refute an essential element of the claim or a defense advanced by either party.  *Kendall*

*v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III.  DISCUSSION

Sections 252 and 307 of the Patent Act provide the legal basis for absolute and

equitable intervening rights in patents that have been reissued after reexamination.  The

first paragraph of 35 U.S.C. § 252, describing the surrender and reissuance of patents,

states:

> The surrender of the original patent shall take effect upon the issue of the
> reissued patent, and every reissued patent shall have the same effect and
> operation in law, on the trial of actions for causes thereafter arising, as if
> the same had been originally granted in such amended form, but in so far
> as the claims of the original and reissued patents are substantially
> identical, such surrender shall not affect any action then pending nor
> abate any cause of action then existing, and the reissued patent, to·the

15

extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

35 U.S.C. § 252 .  The Federal Circuit has explained that

[t]his section provides that when certain conditions are present a reissue shall not abridge or affect certain rights of those who acted before the reissue was granted. *See* Federico, Commentary on the New Patent Act, 35 U.S.C.A. 1, 46 (1954).  Because of such pre-reissue activity, an infringer might enjoy a "personal intervening right" to continue what would otherwise be infringing activity after reissue.  *See* 3 Chisum, Patents, § 15.02[6] (1984). The underlying rationale for intervening rights is that the public has the right to use what is not specifically claimed in the original patent. *Sontag Chain Stores Co. v. National Nut Co.*, 310 U.S. 281, 290, 60 S.Ct. 961, 965, 84 L.Ed. 1204 (1940).

*Seattle Box Co., Inc. v. Industrial Crating and Packing Inc.,* 756 F.2d 1574, 1579 (Fed. Cir. 1985).  The rules and provisions of for reissued patents under 35 U.S.C. § 252 apply to patents that have been reissued after going through a reexamination proceeding:

Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation for the same, prior to issuance of a certificate under the provisions of subsection (a) of this section.

35 U.S.C. 307(b).

The owner of a patent that has been reexamined is entitled to infringement damages for the period between the original issuance date and the date of issuance of the reexamined claims only if the original and reexamined claims are "substantially identical."  *Laitram Corp. v. NEC Corp.,* 163 F.3d 1342, 1346 (Fed.  Cir. 1998). "Reexamined claims are 'identical' to their original counterparts if they are 'without

16

substantive change.'" *Id.* (citing *Seattle Box Co. v. Indus. Crating & Packing*, 731 F.2d 818, 827-28 (Fed. Cir. 1984).

The issue of whether a reexamined claim is "substantially identical" is an issue of law for the court because of "the general principle that 'the interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law, exclusively for the court.'" *Laitram Corp.,* 163 F.3d at 1346-47 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed .Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Defendants bear the burden of establishing their affirmative defense for intervening rights. *Linear Tech. Corp. v. Micrel, Inc.*, 524 F. Supp. 2d 1147, 1156 (N.D. Cal. 2005) (citing *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001)).

### A. The '305 Patent

#### 1. Claims 9-15

There is no dispute that Defendants do not have intervening rights with respect to Claims 9-15. Henrob claims that Defendants are not entitled to them because the claims were not amended during reexamination (Pl.'s Mot. Br. at 7), and Defendants affirmatively state that they "are not asserting intervening rights with respect to apparatus claims 9-15 of the '305 Patent" (Defs.' Resp. at 7).

#### 2. Reexamined Claim 16

Reexamined Claim 16 is nearly identical to original Claim 1, with the sole difference being the substitution of the term "sufficient" for the previous phrase "sufficiently substantial." Original Claim 1 provides "c) clamping the sheets together before the rivet is driven into the first sheet with a clamping force applied immediately

17

adjacent the rivet, the clamping force being <u>sufficiently substantial</u> to prevent sheet material from being drawn laterally inwards towards the rivet as the rivet is driven into the sheets," while Reexamined Claim 16 provides "c) clamping the sheets together before the rivet is driven into the first sheet with a clamping force applied immediately adjacent the rivet, the clamping force being <u>sufficient</u> to prevent sheet material from being drawn laterally inwards towards the rivet as the rivet is driven into the sheets." (Differences underlined).

The court finds this alteration to be insubstantial. "In determining whether substantive changes have been made, we must discern whether the scope of the claims are identical, not merely whether different words are used." *Laitram Corp.*, 163 F.3d at 1346. Here, the words themselves are nearly identical and, in context, the terms do not alter the scope of the claims in any respect.

In *Laitram*, the Federal Circuit instructed how to determine whether reexamined claims are "substantially identical:"

> [T]o determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information. This inquiry, however, is circumscribed by the well-established principle that a court may not import limitations from the written description into the claims. *See Electro Med. Sys. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054, 32 USPQ2d 1017, 1021 (Fed.Cir.1994) ("[C]laims are not to be interpreted by adding limitations appearing only in the specification.").

*Id.* at 1346-47 (internal citations and quotations omitted). The court agrees with Henrob's argument that the intrinsic record reveals that the terms "sufficient" and "sufficiently substantial" are interchangeable. In describing the "sufficiently substantial" term, relating to the required degree of force, Henrob described that the force "is

18

sufficient to prevent sheet material from being drawn radially inward," ('305 Patent File

History at HEN 00404, Pl.'s Ex. 5), and that the force "must be sufficient enough to

prevent sheet material from being drawn laterally inwards" (*Id.* at HEN 00405).

The court has already recognized the similarity between these terms in its claim

construction order, when it held that "[t]he language found in Claim 1 [i.e., 'sufficient'] is

nearly identical to the language found in Claim 9 [i.e., 'sufficiently substantial'] and,

absent any compelling argument from the parties that the claims should be construed

differently, the court will adopt the same construction here." (10/25/06 Order at 29.)

The court did add a modifier to the construction, noting,

> The court will add the modifier "substantial" to its construction in Claim 9,
> inasmuch as Claim 9 utilizes the phrase "the clamping force being
> sufficiently substantial" (Henrob Ex. 2, Col 5:13-14), whereas Claim 1 and
> 16 only use the phrase "the clamping force being sufficient" (Henrob Ex. 3
> at Col 2:3-4,27-28). Interestingly, the original '305 Patent used the phrase
> "sufficiently substantial" in Claim 1, (Henrob Ex. 2 at Col 4:37), but after
> reexamination, the language was changed to merely "sufficient." (Henrob
> Ex. 3 at Col 2:4).

(*Id.* at 30, n.18.) But the addition of the modifier, or the observation that it was

"interesting" that the language changed after reexamination does not alter the

fundamental conclusion of the court, during the claim construction phase, that the terms

were "nearly identical." Nor does it alter the court's conclusion, now, that the extremely

minor alteration of the language does not change the scope of the patent in any respect.

Accordingly, the court finds that Reexamined Claim 16 is "substantially identical" to

Original Claim 1.

Defendants disagree with this conclusion, of course, and argue that the analysis

is much simpler because there was no Claim 16 in the original patent and thus they

19

necessarily have intervening rights for the new Claim 16.  Defendants argue for a bright line test and state the starting point in this analysis is the rule that "[a]n original patent cannot be infringed once a reissue patent has issued, for the original patent is surrendered."  *Seattle Box Co.*, 731 F.2d at 827.  As an exception to this rule, "Congress has legislated that under certain circumstances claims of the original patent have a form of continuity if carried over to the reissue patent."  *Id.* (citing 35 U.S.C. § 252).  "[T]he claims of the reissue patent to reach back to the date the original patent issued, *but only if* those claims are identical with claims in the original patent. With respect to new or amended claims, an infringer's liability commences only from the date the reissue patent is issued."  *Id.*  Under this authority, Defendants suggest that new claims can *never* relate back to the original patent.

The court disagrees.  Title 35 U.S.C. § 307 provides that "[a]ny proposed amended *or new claim* determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents"  35 U.S.C. § 307(b) (emphasis added). Thus, the text of § 307 itself contemplates that new claims can relate back to the original patent if the test under § 252 is met.  Defendants point to the text of § 252, however, which states that a person "who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent" may continue to do so "unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent *which was in the original patent*."  35 U.S.C. § 252 (emphasis added). Thus, Defendants argue that while § 307 references "new claims," § 307 also refers to §

252, which itself allows intervening rights unless the reissued claim was in the original patent.  Defendants therefore propose a bright line rule that if the new claim was not in the original patent, then Defendants necessarily have intervening rights with respect to that claim.

The problem with Defendants argument, however, is that it flies in the face of the accepted test for determining whether intervening rights exist and, further, the text of the relevant statutory provisions.  The Federal Circuit has instructed that the court must look at original and reexamined claims to see if they are "substantially identical," that is, if they are 'without substantive change.'" *Laitram Corp.,* 163 F.3d at 1346 (citations omitted).  Toward that end, § 252 states (earlier in that statute than that portion which Defendants quote) that "the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent."  35 U.S.C. § 252. Accordingly, § 252 instructs that the focus is on whether the "claims are substantially identical with the original patent."  Under Defendants' bright line analysis, if the original patent inadvertantly contained two claim 3s and no claim 4, and the reissued patent corrected this typographical error to turn the second claim 3 into a claim 4, Defendants would necessarily have intervening rights in the claim 4 because there was no claim 4 in the original patent.  Rather, the correct analysis focuses on whether "the scope of the claims are identical, not merely whether different words are used."  *Laitram*, 163 F.3d at 1346.  This test requires the court to elevate substance over form, rather than, as Defendants would assert, form over substance.  As discussed above, the scope and substance of reissued Claim 16 is "substantially identical" to original Claim 1.

### 3. Reexamined Claim 1

During reexamination, Claim 1 was amended to substitute the term "sufficient" for the former term "sufficiently substantial" and to include the phrase "said clamping force being larger than a clamping force merely required to hold said sheets against each other in a generally non-moving relation."  The parties disagree as to whether these alterations changed the scope of the patent or, instead, if the alterations were merely "clarifications" which did not substantively change the patent such that the two claims are  "substantially identical."  The court agrees with Henrob that the alterations were merely clarifications.

For the same reasons discussed above with respect to Claim 16, based on the context within the claim as well as the intrinsic evidence, the substitution of the term "sufficient" for the former term "sufficiently substantial" did not affect the scope of the patent.  Nor did the addition of the phrase "said clamping force being larger than a clamping force merely required to hold said sheets against each other in a generally non-moving relation."  Instead, the court accepts Henrob's argument that these additions were made to clarify the language of the existing patent, rather than to alter its scope.  Indeed, this addition is consistent with Henrob's view of its patent since its origination.  During the prosecution of the original '305 Patent, Henrob stated that the claims in the original '305 Patent "claim that the clamping force must be sufficient enough to prevent sheet material from being drawn laterally inwards towards the rivet as the rivet is driven into the sheets. This is in contrast to merely clamping to ensure that the two sheets of material are in contact."  (305 Patent File History at HEN 00405, Pl.'s Ex. 5.)

22

"[A] claim made more definite by adding a term from the specification, without change in scope, is not substantively changed, and the claims are 'legally identical.'" *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1361 (Fed Cir. 1991) ("*Laitram I*") (citing *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417 (Fed. Cir. 1989)).  Changes have been rejected where the changes are "not a matter of a mere clarification of language to make specific what was always implicit or inherent." *Seattle Box Co.,* 731 F.2d at 827-28.  Here, however, the changes indeed made explicit what the court deems, based on the language and scope of the original patent itself, was inherent.

"'Identical' does not mean verbatim."  *Laitram I*, 952 F.2d at 1361.  As the Federal Circuit has explained:

> In *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 1 USPQ2d 1202 (Fed. Cir.1986) the court rejected the argument that any amendment to the claims during reexamination is substantive. Referring to the legislative history of reexamination, the court remarked that no more rigorous standard was intended for reexamined claims than for reissued claims, wherein precedent had established that "identical" in § 252 means without substantive change in the scope of the claims. *Id.* at 978, 1 USPQ2d at 1208. The court determined that the claim changes merely clarified the invention, without substantive change in the meaning or scope of the claim.

*Id.*  Moreover, contrary to Defendants arguments, *Laitram I* held that claim amendments made during reexamination following a prior art rejection are not *per se* substantive changes.[6]  *Id.*

---

[6]Indeed, the court disagrees with Defendants that Henrob's amendments were not "clarifying" amendments but were rather limiting amendments which were necessary to distinguish the claims over the prior art.  The court is not persuaded that this case is analogous to the facts in *Bloom Engineering CO. v. North American Manufacturing Co.*, 129 F.3d 1247 (Fed. Cir. 1997), where the patentee "narrowed and limited" their claims to distinguish them over prior art.  Instead, the court views Henrob's amendments as *clarifying* them in order to make clear that their scope did not encompass the prior art.

23

Here, the court is satisfied that the scope of the original patent included a clamping force that was "larger than a clamping force merely required to hold said sheets against each other in a generally non-moving relation."  The court agrees that this limitation was inherent in the original patent's use of the term "sufficiently substantial."[7]  Accordingly, the court finds that, as with Claim 16, Claim 1 is "substantially identical with the original patent, [and, thus,] shall constitute a continuation thereof and have effect continuously from the date of the original patent."  35 U.S.C. § 252.

### 4.  Claims 1 and 10 of the '127 Patent[8]

During reexamination, the final claim limitation of Claim 1 of the '127 Patent was amended as follows, with the deleted words in the brackets and the added words underlined:

the fastener actuator is vertically movable through the fastener delivery

_____

[7]The original patent spoke of obviating or mitigating certain disadvantages, such as substantial deformation of the upper sheet, '305 Patent Col. 1:25, 43-44, and thereafter discussed the use of a substantial force, Col. 1:58-59.

[8]The court is inclined to agree with Plaintiff that Defendants have failed to properly plead an intervening rights defense with respect to the '127 Patent.  Defendants argue that they could raise this defense at any time, that their failure to plead it earlier was inadvertant and, in any event, Plaintiff was on notice of their intent to rely on the defense.  The court generally requires that amendments to the pleadings be done as early as possible and, further, the fact that Defendants themselves moved for summary judgment only on their intervening rights defense with respect to the '305 Patent strikes the court as, perhaps, an indication that they did not intend to pursue this issue.  It is also true that Plaintiff must have had some indication that Defendants intended to rely on such a defense with respect to the '127 Patent, since its motion included argument on that issue.  However, Plaintiff put the issue before the court out of either an abundance of caution or due to the ambiguity in the record, while Defendants' failure to raise the issue could be seen as "sandbagging."  Nonetheless, the court will address the issue on the merits.

> passage, the actuator including a nose at its leading end for engaging a
> fastener and advancing the same toward the workpiece, the actuator
> being provided with an internal <u>axial</u> passage one end of which is open to
> the nose of the actuator and another end of which is connected to a
> vacuum source through a control, [whereby connecting] the internal
> passage <u>being connected</u> to the vacuum source [effects] <u>during advance</u>
> <u>of the fastener through the delivery passage by the actuator so as to effect</u>
> vacuum retention of the fastener on the nose of the actuator to maintain
> orientation of the fastener as the actuator advances <u>through the delivery</u>
> <u>passage</u> toward the workpiece.

('127 Patent Reexamination Certificate, Col. 1:31-Col. 2:7, Pl.'s Ex. 2.)

First, the court agrees with Henrob's argument, unrebutted by Defendants, that

adding the term "axial" to the phrase "internal passage one end of which is

open"

> only describes what was inherently required by the original claim language
> and specification; thus, the amendment is not a substantive change for
> purposes of the intervening rights defense." *Laitram I*, 952 F.2d at 1361.
> The presence of the phrase "internal axial passage" in original claim 3 of
> the '127 Patent (which depends from claim 1) and in original claim 10 of
> the patent also confirms the inherency. *Bloom Eng' g Co.*, 129 F.3d at
> 1250.

(Pl.'s Mot. at 13.)  The court find this argument persuasive, particularly in the absence of

any argument from Defendants on the issue.  Similarly, the court agrees with Henrob's

unremarkable assertion that "substituting the phrase 'being connected' for the phrase

'whereby connecting' does not change the scope of the original and amended claims; at

most, it is a grammatical change that clarifies the claim language, which will not give

rise to intervening rights."  (*Id.* (citing *Kaufman Co.*, 807 F.2d at 977).)

The crux of the parties' dispute on this claim, however, focuses on changing the

phrase "effects vacuum retention of the fastener on the nose of the actuator

25

to maintain orientation of the fastener as the actuator advances toward the workpiece"
in original Claim 1 to the phrase "during advance of the fastener through the delivery
passage by the actuator so as to effect vacuum retention of the fastener on the nose of
the actuator to maintain orientation of the fastener as the actuator advances through the
delivery passage toward the workpiece."

Defendants argue that these amendments were made after a telephone call with
the Patent Office reexamination examiner and that Henrob agreed to make these
changes in order to distinguish it from the prior art.  (Defs.' Resp. at 22-23.)  Defendants
argue that without these amendments, "the vacuum source could have been
disconnected at anytime [sic], which is exactly what the prior art discloses."  (*Id.* at 22.)
The court disagrees.

First, as discussed above, *Laitram I* held that claim amendments made during
reexamination following a prior art rejection are not *per se* substantive changes.  952
F.2d at 1361.  Claim changes that merely clarify, without substantive change, are
"identical" for purposes of 35 U.S.C. § 252.  Here, however, the changes are indeed
clarifications.  Even before the amendment, the claim provided that the vacuum be
maintained as the actuator advances toward the workpiece, and as Henrob argues, "the
movement of which is established in the preamble and first limitation of claim 1."  (Pl.'s
Mot. Br. at 13-14.)  Accordingly, the court finds that the amendment merely clarifies
what was implicit, or perhaps even explicit, in the original '127 Patent.

This analysis also applies to Claim 10 of the '127 Patent, which was amended
during reexamination as follows, with the deleted words in the brackets and the added
words underlined:

26

the fastener actuator is mounted for vertical reciprocal movement in the
housing and through the fastener delivery passage, the actuator including
a nose at its leading end for engaging a fastener and advancing the same
toward the workpiece, the actuator being provided with an internal axial
passage one end of which is open to the nose of the actuator and another
end of which is connected to a vacuum source through a control, [whereby
connecting] the internal passage being connected to the vacuum source
[effects] during advance of the fastener through the delivery passage by
the actuator so as to effect vacuum retention of the fastener on the nose
of the actuator to maintain orientation of the fastener as the actuator
advances through the delivery passage toward the workpiece.

('127 Patent Reexamination Certificate, Col. 2:21-35, Pl.'s Ex. 2.)  As discussed above

with respect to Claim 1 of the '127 Patent, Reexamined Claim 10 of the '127 Patent is

"substantially identical" to the original Claim 10.  The court will therefore grant Plaintiff's

motion and hold that Defendants do not have intervening rights as to the '127 Patent.

### 5.  Equitable Intervening Rights[9]

The BMW Defendants also argue that they are entitled to equitable intervening

rights based on their "substantial preparation for the manufacture, import and sale after

April 19, 2005 of vehicles made with Böllhoff SPR machines purchased prior to April 19,

2005."  (Defs.' Mot. Br. at 16.)  Equitable intervening rights are governed by the second

sentence of the second paragraph of 35 U.S.C. § 252, which states:

The court before which such matter is in question may provide for the
continued manufacture, use, offer for sale, or sale of the thing made,
purchased, offered for sale, used, or imported as specified, or for the
manufacture, use, offer for sale, or sale in the United States of which
substantial preparation was made before the grant of the reissue, and the
court may also provide for the continued practice of any process patented
by the reissue that is practiced, or for the practice of which substantial

---

[9]In light of the court's conclusion that the Reexamined '127 and '305 Patents are
"substantially identical" to the original Patents, the BMW Defendants are not entitled to
an equitable intervening rights defense.  Nonetheless, the court will address their
arguments.

> preparation was made, before the grant of the reissue, to the extent and
> under such terms as the court deems equitable for the protection of
> investments made or business commenced before the grant of the
> reissue.

35 U.S.C. § 252. "Equitable intervening rights . . . explicitly extend protections for

continued manufacture, thus extending protection to articles not yet in existence at the

time of the reissue." *Shockley v. Arcan, Inc.,* 248 F.3d 1349, 1360 (Fed. Cir. 2001).

"While provided by a statutory provision, this prong of the intervening rights is entirely

equitable in nature. As such, issues of fact underlying the equitable intervening rights

are matters for court, not jury disposition." *Revolution Eyewear, Inc. v. Aspex Eyewear,*

*Inc.,* 563 F.3d 1358, 1373 (Fed. Cir. 2009).

The court is persuaded by Visto Corp. v. Sproqit Technologies, Inc. 413 F. Supp.

2d 1073, 1090 (N.D. Cal. 2006), in which the Northern District of California listed several

factors to consider when determining whether to grant the equitable remedy of

intervening rights:

> Upon weighing the equities of intervening rights, the Court may consider
> various factors: (1) whether "substantial preparation" was made by the
> infringer before the reissue; (2) whether the infringer continued
> manufacturing before reissue on advice of its patent counsel; (3) whether
> there were existing orders or contracts; (4) whether non-infringing goods
> can be manufactured from the inventory used to manufacture the
> infringing product and the cost of conversion; (5) whether there is a long
> period of sales and operations before the patent reissued from which no
> damages can be assessed; and (6) whether the infringer has made profits
> sufficient to recoup its investment. *See Seattle Box Co. v. Industrial
> Crating & Packing, Inc.*, 756 F.2d 1574, 1579 (Fed.Cir. 1985) ( "Seattle
> Box II" ); *Plastic Container Corp. v. Continental Plastics*, 607 F.2d 885,
> 903 (10th Cir. 1979); *Mine Safety Appliances Co. v. Becton Dickinson and
> Co.*, 744 F.Supp. 578, 580-81 (S.D.N.Y. 1990) (on cross-motions for
> summary judgment, requiring alleged infringer to pay royalties for units
> sold after reissue date and protecting intervening rights by allowing it to
> continue it product line); *Wayne-Gossard Corp. v. Sondra, Inc.*, 434 F.
> Supp. 1340, 1363 (E.D. Pa.1977), aff'd, 579 F.2d 41 (3d Cir. 1978).

28

*Visto Corp.*, 413 F. Supp. 2d at 1090.  In considering these factors, the court is not persuaded that the BMW Defendants are entitled to equitable intervening rights.

While there is no dispute that the BMW Defendants have made a substantial investment in the purchase of Böllhoff SPR machines, the court is not persuaded that this fact alone entitles them to equitable intervening rights.  Defendants argue that it was reasonable for them to rely on Böllhoff's representations and contractual assurances that its machines did not infringe the Patent, but the court is not persuaded that relying on Böllhoff's assurances, without conducting any investigation of their own or seeking advice of their own counsel, is enough to invoke the *equitable* powers of the court.  Indeed, Defendants' motion devotes only three paragraphs to why they believe the BMW Defendants are entitled to equitable relief.  The BMW Defendants appear to be arguing that investing money into a product, and relying on the product's seller's representations, is enough to entitle them to equitable intervening rights.  The court disagrees.  Even if the scope of the patents had changed on reexamination, the court would nonetheless deny Defendants' motion for equitable intervening rights.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that  Defendants'  "Motion for Summary Judgment Based on Defendants' Intervening Rights in the '305 Patent" [Dkt. # 242] is DENIED and Henrob's "Motion for Summary Judgment on Defendants' Intervening Rights Defense" [Dkt. # 245] is GRANTED.

        S/Robert H. Cleland                  
       ROBERT H. CLELAND
       UNITED STATES DISTRICT JUDGE

Dated:  September 29, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 29, 2009, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\05-73214.HENROB.InterveningRights.wpd